# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: SGK Ventures, LLC<br><br>v.<br><br>_____<br><br>Kelly Beaudin Stapleton<br><br>v.<br><br>NewKey Group, LLC, et al<br><br>And<br><br>J. Mark Lozier, et al | Case No: 15 C 11224 and related cases 15 C 11226 & 15 C 11253<br><br>Judge: Thomas M. Durkin |

## ORDER

Enter Findings of Fact and Conclusions of Law. For the foregoing reasons, the Court finds in Defendants' favor on the Trustee's claim that the Fiduciary Defendants breached their fiduciary duties in connection with the Prophet deal. Accordingly, the Trustee's motion for summary judgment in case 15 C 11224 [98] is denied; Defendants' motion for judgment in case 15 C 11226 [23] is granted; and the Trustee's motion for summary judgment in case 15 C 11253 [23] is denied. As the Court has already entered judgment in all three cases, this order completes the proceedings before this Court.

Date: 6/19/2018 /s/ Thomas M. Durkin

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>SGK VENTURES, LLC,<br><br>    Debtor.<br><br>------------------------------------------------------------<br><br>KELLY BEAUDIN STAPLETON, solely in her capacity as Trustee of the SGK Ventures, LLC Liquidating Trust,<br><br>    Appellee and Cross-Appellant,<br><br>    v.<br><br>NEWKEY GROUP, LLC, and NEWKEY GROUP II, LLC,<br><br>    Appellants and Cross-Appellees,<br><br>    and<br><br>J. MARK LOZIER; KCL MANAGEMENT CORP.; JOEL D. TAUBER; MICHAEL ROSENBERG; MICHAEL C. SHEFFIECK; KAREN A. BENINATO; THOMAS P. BERTRAND; AMY FLEISSNER; KLUSKA FAMILY LIMITED PARTNERSHIP; LOGANBERRY, LLC; LAWRENCE PLANT; PLATT FAMILY LIMITED PARTNERSHIP; BERNARD E. PLATT TRUST UAD 12/20/95; MICHAEL J. PUGLIESE; ANNE RIZZO; ROSENBERG FAMILY, LLC; TAMARACK LP; TAUBER-KEYWELL FAMILY LLC; TAUBER-KEYWELL II, LLC; JOEL D. TAUBER TRUST; JOHN A. TOTH TRUST; DENNIS C. TROSTLE; LINDA A. TROSTLE; MICHAEL C. SHEFFIECK TRUST; LOUIS E. WAGNER, JR.; KEN KLUSKA; KLUSKA FAMILY LIMITED PARTNERSHIP; BERNARD E. PLATT, JR.; PHILIP ROSENBERG; TAUBER ENTERPRISES LLC,<br><br>    Cross-Appellees. | No. 15 C 11224<br>and related cases<br>No. 15 C 11226 &<br>No. 15 C 11253<br><br>Judge Thomas M. Durkin |

FINDINGS OF FACT & CONCLUSIONS OF LAW

NewKey Group, LLC and NewKey Group II, LLC (the "NewKeys") were entities created to facilitate loans to an industrial scrap metal recycling company called Keywell, LLC. Keywell is the Debtor in this action, and is now known as SGK Ventures, LLC, although the Court will continue to refer to it as "Keywell." The NewKeys were created and funded by Keywell insiders.[1] Despite the loans Keywell received from the NewKeys, Keywell eventually declared bankruptcy. Kelly Beaudin Stapleton is the Trustee appointed by the bankruptcy court on behalf of Keywell. During the proceedings in bankruptcy court, the Trustee filed an adversary complaint alleging multiple counts against the NewKeys and the Keywell insiders, including, among others, counts for: recharacterization of the NewKey loans as equity (Count III); equitable subordination of the NewKey loans (Count VII); avoidance of interest payments on the NewKey loans (Counts IV-VI); breaches of fiduciary duties by various Keywell insiders (Counts VIII and IX); and recovery of two distributions Keywell made to its members as fraudulent transfers (Counts I and II). After a bench trial, the bankruptcy court held that the NewKey loans should not be recharacterized as equity, but should be equitably subordinated to the claims of Keywell's unsecured creditors, and denied the rest of the Trustee's claims. Defendants appealed the bankruptcy court's equitable subordination holding, and the Trustee appealed the other holdings enumerated above.

---

[1] By the term "Keywell insiders" the Court refers to the Cross-Appellees in this action other than the NewKeys. The Keywell insiders together with the NewKeys are referred to as the "Defendants."

In an opinion and order dated June 20, 2017, the Court reversed the bankruptcy court on its equitable subordination decision appealed by Defendants. R. 66 (*In re SGK Ventures, LLC*, 2017 WL 2683686 (N.D. Ill. June 20, 2017)).[2] The Court also affirmed the bankruptcy court's other decisions appealed by the Trustee, except for one part of the Trustee's breach of fiduciary duty claim. In that claim, the Trustee alleges that some of the Keywell insiders—the "Fiduciary Defendants"—breached their fiduciary duties to Keywell and its unsecured trade creditors by not properly considering a partial buyout offer from a company called Prophet Equity. The bankruptcy court's trial decision did not address this aspect of the Trustee's breach of fiduciary duty claim. Since this Court had ruled in Defendants' favor on the other claims, it is necessary to address the claim regarding the Prophet deal in the first instance. In part because the bankruptcy judge who conducted the trial on these claims has retired, the Court determined that withdrawing the reference from the bankruptcy court on this claim was the most efficient way forward.

At a status hearing on August 31, 2017, the parties agreed that there was no need for additional testimony and that judgment could be entered based on the bankruptcy trial record. *See* R. 96 at 3:25–4:5. The parties' only concern was that the Court would request additional evidence if necessary. *See id.* at 4:5–5:9. On the basis of this agreement, the Court entered an order directing the parties to submit briefs seeking judgment based on the bankruptcy court trial record. *See* R. 97.

---

[2] Record cites in this order are to case No. 15 C 11224.

3

In her brief on this motion, the Trustee now argues that "because this Court did not oversee the trial in this case and therefore is not positioned to weigh the evidence and evaluate witness credibility . . . . Rule 56 provides the only applicable legal standard." R. 99 at 14 n.6. This argument is contrary to the Trustee's agreement at the August 31, 2017 hearing. At that hearing, the Court made clear that if either party insisted that the court rendering judgment have heard live testimony, this Court would remand the case to the bankruptcy court for such proceedings. The Trustee agreed that it was unnecessary for this Court to hear live testimony. Furthermore, the Trustee does not identify any piece of testimony for which the Court's findings will turn on a credibility determination. In fact, from the Court's perspective, the relevant facts are largely undisputed and the Trustee's breach of fiduciary duty claim largely, if not entirely, turns on legal questions.

Federal Rule of Civil Procedure 52 permits a court to enter judgment "on a written record." *Eirhart v. Libbey-Owens-Ford Co.*, 996 F.2d 837, 840 (7th Cir. 1993) ("Rule 52 allows for matters to be tried to the district court on a written record; we do not read the Rule to require that an evidentiary hearing be held."); *see also Van de Sande v. Dan de Sande*, 2008 WL 239150, at *1 (N.D. Ill. Jan. 29, 2008) (rendering judgment based on affidavits in lieu of live testimony pursuant to Rule 52 after remand on appeal and reassignment from another district judge). Although the Court's order withdrawing the reference and setting a briefing schedule did not specifically reference Rule 52, entering judgment based on the record of evidence presented during trial in the bankruptcy court is what the Court and the parties

4

contemplated at the August 31, 2017 hearing. And with a trial already having occurred, Rule 56's procedures for seeking judgment as a matter of law are inapplicable.

Therefore, this opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 52(a). These findings are based on the documentary evidence and trial testimony transcripts. For the following reasons, the Court finds in favor of Defendants on the Trustee's breach of fiduciary duty claim with respect to the Prophet deal.

## Findings of Fact

In its June 20 Opinion, the Court set forth the relevant facts as found by the bankruptcy court after the bench trial. The Court assumes familiarity with those background facts. The following are the Court's factual findings that are of particular relevance to the Trustee's breach of fiduciary duty claim which is now before the Court.

Keywell's largest owners were defendants J. Mark Lozier (controlling 46.89%), Joel D. Tauber (24.37%), Michael C. Sheffieck (4.31%), and Michael Rosenberg (3.6%). R. 111 ¶¶ 6-10. Keywell was managed by KCL Management Corporation, and Lozer, Tauber, and Rosenberg sat on the KCL board. *Id.* ¶¶ 11-13. Lozier and Tauber each owned 50% of KCL, and Lozier served as its CEO. *Id.* ¶¶ 14-15. Lozier served as Keywell's president and CEO, Sheffieck served as chief financial officer, and Rosenberg served as Keywell's senior vice president, primarily responsible for buying inventory. *Id.* ¶¶ 3-5. Tauber never held a particular

operational role with Keywell. The bankruptcy court made the following findings with respect to Keywell's management:

> The [KCL] board met once a quarter, though the board members regularly communicated about the business between meetings. The [KCL] board meetings generally consisted of two parts: the board would first hear presentations from Keywell's executive committee—the officers and key managers of the company—and then there would be private discussions among the three board members. Presentations to the board were compiled in packages distributed to board members before the meeting.
>
> The testimony and documentation produced at the trial established that Lozier and Tauber were the principal decision makers for Keywell. Although Rosenberg participated in the meetings of the [KCL] board and had private discussions with Lozier on Keywell matters . . . there is no [documentary evidence] indicating that Rosenberg actively participated in any of the relevant decisions and Rosenberg's own testimony reflected a lack of familiarity with much of the decision-making.

R. 49-1 at 5 (internal record citations omitted).

The NewKeys were also owned primarily by Lozier (45.55% of NewKey I and 52.47% of NewKey II), Tauber (27.49% and 28.78%), and Sheffieck (4.52% and 5%). R. 111 ¶¶ 33-35. Lozier and Tauber owned the LLC that served as the NewKeys manager. *Id.* ¶¶ 37-38. Lozier, Tauber, Sheffieck, and Rosenberg were all NewKey officers and/or managers. *Id.* ¶¶ 38-41. Lozier, Tauber, Sheffieck, Rosenberg, and KCL are the "Fiduciary Defendants" against whom the Trustee makes the claim currently before the Court. R. 99 at 1.

In the first quarter of 2013, Keywell began planning to wind down its business, while at the same time investigating opportunities to sell the company to

6

a new investor. R. 111 ¶ 57. Prophet expressed the most significant interest. *Id.* ¶ 58.

On May 29, 2013, Prophet sent Keywell a formal letter of intent proposing to buy 70% of Keywell for $15 million on the condition that the NewKey debt be converted to preferred shares. *Id.* ¶¶ 62-63. The balance sheet included with Prophet's proposal assumed a refinancing of the Bank of America line of credit, and showed that the deal resulted in a $5 million payment to Keywell's trade creditors. *Id.* ¶¶ 63-64.

Lozier and Sheffieck were opposed to converting the NewKey debt to equity, and expressed as much in communications with Keywell's outside counsel. *Id.* ¶ 73. Tauber had earlier told Lozier that he thought liquidation of Keywell was necessary and left the process to Lozier's oversight. *See* R. 104 at 6 n.13. Tauber also suggested in a June 10, 2013 email exchange with Lozier that he would not agree to convert the NewKey debt to equity. R. 111 ¶¶ 81-82. The NewKey's operating agreements required 75% supermajority votes by their respective memberships to convert the debt to equity. *See* R. 104-1 at 233-34, 275-76 (§ 7.3(b)).

On June 6, 2013, Lozier responded to Prophet's offer stating that he had discussed the offer with a "member of the Keywell board and senior management," and they "believe that both Prophet and the subordinated debt holders of Keywell are better protected if the capital to be contributed by Prophet takes the form of subordinated debt rather than preferred equity and the NewKey debt remains in place. Accordingly, the NewKey subordinated debt will not be converted to equity."

7

R. 104-1 at 315. Lozier's letter included additional counter proposals and stated an intent to "continu[e] our discussions toward a mutually successful transaction." *Id.* at 318. Keywell's investment banker had communications with Prophet's representative over the course of June 7-8. *Id.* at 222-23. Despite their stated opposition to converting the NewKey debt to equity, Lozier and Tauber continued to discuss the possibility of conversion of the NewKey debt, or, in the alternative, Tauber selling his Keywell shares to Prophet at a discount. *Id.* at 309-10, 319-22.

On June 18, Prophet terminated the letter of intent and pulled out of the deal. R. 111 ¶ 86. Based on the fact that Prophet spent twelve days considering Keywell's counter proposal, including a rejection of converting the NewKey debt to equity, Lozier, Keywell's investment banker and outside counsel testified that they believed Prophet pulled out of the deal due to Keywell's fading business prospects, not Keywell's opposition to the NewKey debt conversion. *See* R. 104 at 12-13. No representative from Prophet was ever deposed or called at trial to testify as to the reasons for Prophet pulling out of the deal. *See id.* at 13.

## Conclusions of Law

"To establish a breach of fiduciary duty under Illinois law, a plaintiff must show that (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *nClosures Inc. v. Block & Co.*, 770 F.3d 598, 603 (7th Cir. 2014) (citing *Neade v. Portes,* 739 N.E.2d 496, 502 (Ill. 2000)). The Trustee argues that the Fiduciary Defendants breached their duties to Keywell of loyalty and care. Keywell was an

Illinois limited liability company, and the Fiduciary Defendants all served Keywell in a management role of some kind. Illinois law provides that LLC managers owe the LLC the fiduciary duties of loyalty and care. 805 ILCS 180/15-3(b), (c), (g). Managers also must discharge these duties "consistent with the obligation of good faith and fair dealing." 805 ILCS 180/15-3(d), (g). A manager must "exercise their best care, skill, and judgment in the management of the corporate business solely in the interest of the corporation." *Ind. Trust Corp. v. Hurwick*, 814 N.E.2d 895, 907 (Ill. App. Ct. 1st Dist.) (quoting *Shlensky v. S. Parkway Bldg. Corp.*, 166 N.E.2d 793, 799 (Ill. 1960)). Also, managers "must inform themselves of material facts necessary for them to properly exercise their business judgment." *Davis v. Dyson*, 900 N.E.2d 698, 714 (Ill. App. Ct. 1st Dist. 2008). Importantly, a manager "does not violate a duty or obligation . . . merely because the [manager's] conduct furthers the [manager's] own interest." 805 ILCS 180/15-3(e), (g).

The Trustee argues that the Fiduciary Defendants ownership and/or management relationship with the NewKeys created a conflict for them with respect to the Prophet deal, because the deal contemplated conversion of the NewKey debt to equity.[3] The Trustee contends further that this conflict required the Fiduciary Defendants to "recuse" themselves from the Prophet deal and to appoint an "independent committee" to represent Keywell's interests in the deal. R.

---

[3] *See* R. 99 at 20-21 ("The Fiduciary Defendants' conflict of interest with respect to the Prophet [deal] is plain. As the largest stakeholders and controlling members of NewKey, the Fiduciary Defendants faced the greatest economic peril from conversion of the NewKey debt to equity, as Prophet had proposed.").

9

99 at 21. The Trustee claims that the Fiduciary Defendants' failure to take these actions constitutes a breach of both the duties of loyalty and care.[4]

## I. Burden of Proof

Although the plaintiff has the initial burden of proof, Illinois law provides that, "in a proceeding contesting the validity of . . . a transaction, the person asserting the validity has the burden of proving fairness," unless the transaction is ratified by disinterested officers or directors. 805 ILCS 5/8.60(a); *Shlensky*, 166 N.E.2d at 801 ("directors shall have the burden of establishing the fairness and propriety of the transactions"). Thus, under 805 ILCS 5/8.60, if the plaintiff meets its initial burden to prove that a corporate fiduciary "receives a personal benefit from a transaction with or by the corporation," the burden shifts to the fiduciary to "demonstrate that the arrangement was 'fair' to the corporation, unless either disinterested directors or disinterested shareholders approved the transaction with knowledge of all material facts." *Olsen v. Floit*, 219 F.3d 655, 657 (7th Cir. 2000); *see also Coduti v. Hellwig*, 469 N.E.2d 220, 230 (Ill. 1984) ("It is not enough, however, to show merely that a fiduciary has entered into a transaction with the corporation to which he owes the duty of loyalty in order to shift the burden of proof. Rather, the one asserting the breach of the duty of loyalty must first establish that the fiduciary profited from the transaction."); *Murchie v. Sorensen*, 2015 WL 728310, at *5 (Ill. App. Ct. 1st Dist. Feb. 18, 2015) ("the initial burden to show improper self-dealing is

---

[4] *See* R. 99 at 24 ("their conflicted decision-making and breach of the duty of loyalty were, in and of themselves, a breach of the duty of care").

on the plaintiff shareholder, the burden then shifts to the corporation's fiduciary to show that the transaction was valid.").

There is little Illinois law about what it means for a corporate fiduciary to prove that transaction was "fair." Illinois courts, however, "are often guided by decisions of other jurisdictions, especially Delaware cases on corporate law issues." *RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, 2012 WL 401490, at *15 (N.D. Ill. Feb. 7, 2012) (citing *Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.2d 374, 379 (7th Cir. 1984)); *see, e.g., In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 806 (7th Cir. 2003) ("To determine whether demand is futile under Illinois law, the Illinois courts have applied the standard set forth by the Delaware Supreme Court[.]"). Under Delaware law, a corporate fiduciary with a personal interest in a corporate transaction "must establish that the transaction was the product of both fair dealing and fair price." *Seidel v. Byron*, 405 B.R. 277, 290 (N.D. Ill. 2009) (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)); *accord Shaper v. Bryan*, 864 N.E.2d 876, 884 (Ill. App. Ct. 1st Dist. 2007). "Fair dealing involves analyzing how the transaction was structured, the timing, disclosures, and approvals." *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011).

The Fiduciary Defendants argue that they should not have the burden to demonstrate that the transaction (or failure to transact) with Prophet was fair because they were not on "both sides" of the transaction and did not derive a "personal benefit" from the transaction. *See* R. 108 at 8. The Fiduciary Defendants

11

contend that they were not on both sides of the transaction because they did not have "any ownership or other interest in Prophet." *Id.* at 8. This is too narrow a view of the circumstances of the Prophet deal. As the Trustee points out, the Prophet deal was really a "tripartite" proposal involving Prophet, Keywell, and the NewKeys, *see* R. 122 at 3, and the Fiduciary Defendants sat on two of those three sides. Moreover, the Fiduciary Defendants obtained the NewKey debt due to their control over Keywell. *See Odyssey Partners, L.P. v. Fleming Cos., Inc.*, 735 A.2d 386, 412 (Ch. Ct. Del. 1999) (suggesting that fairness review would be appropriate had a creditor "used [his] position as [the corporation's] largest stockholder to secure terms [on the corporation's debt he owned] that might not otherwise have been available"). Since the treatment of the NewKey debt was central to whether the Prophet deal would succeed, the Court finds that the Fiduciary Defendants were "interested" in the Prophet deal, such that it is appropriate for them to bear the burden to demonstrate that the process of considering the Prophet deal was fair.[5]

The Fiduciary Defendants also argue that the "fairness doctrine . . . . cannot apply because fiduciaries have no obligation to sacrifice their own interests as creditors in order to assist the company." R. 108 at 9. In other words, the Fiduciary

---

[5] Although one might think the Trustee is arguing that the Fiduciary Defendants must prove the fairness of their decision not to convert the NewKey debt to equity, the Trustee has "disavowed" this argument, *see* R. 105 at 12, describing it as a "red herring," *see* R. 99 at 30. This is likely because the Fiduciary Defendants have no such obligation in their roles as Keywell decision-makers. *See Odyssey Partners*, 735 A.2d at 415 ("[F]iduciary obligation does not require self-sacrifice. . . . Thus one who may be both a creditor and fiduciary (e.g., a director or a controlling shareholder) does not by reason of that status alone have special limitations imposed upon the exercise of his or her creditor rights.").

Defendants argue that since they were under no fiduciary obligation to convert the NewKey debt to equity to their detriment, their failure to do so cannot be a breach of their fiduciary duties. This argument, however, implicitly concedes that the Fiduciary Defendants benefited from the failure of the Prophet deal at the expense of Keywell. These are precisely the circumstances when it is proper to shift the burden of proof to the interested fiduciary under Illinois law.

Illinois law recognizes that a fiduciary's personal interest in a transaction—the condition for shifting the burden to prove fairness to a defendant—does not necessarily mean that the fiduciary acted upon that interest to breach their duty to the corporation. *See* 805 ILCS 180/15-3(e), (g) (a fiduciary "does not violate a duty or obligation . . . merely because the [fiduciary's] conduct furthers the [fiduciary's] own interest."; *see also CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 209, 219 (7th Cir. 2011) ("To have a conflict and to be motivated by it to breach a duty of loyalty are two different things—the first a factor increasing the likelihood of a wrong, the second the wrong itself."); *id.* at 220 ("Although rebutting the application of the business-judgment rule is similar to proving duty and breach, and proving 'entire fairness' is similar to disproving causation and injury, the concepts are not identical."). Therefore, the Court's decision to shift the burden of proof to the Fiduciary Defendants does not preclude them from meeting their burden by demonstrating that they did not breach any duty they had to Keywell.

## II. Breach

The Trustee claims that the Fiduciary Defendants breached their duty to Keywell by failing to recuse themselves in favor of an independent committee to review the Prophet deal. Generally, an independent committee is appointed to evaluate whether a particular transaction benefits the corporation. *See Hicks v. Midwest Trans.*, 500 F.3d 647, 649 (7th Cir. 2007) ("805 ILCS 5/8.60 . . . requires authorization from a majority of disinterested shareholders or directors when an interested director seeks to engage in a business transaction with the corporation."). Here, however, there is no dispute that the Prophet deal would have benefited Keywell. No independent committee was necessary to reach that conclusion, because everyone involved—including the Fiduciary Defendants—already agreed on that point. An independent committee is necessary when a corporate decision needs to be made in which the fiduciary has a conflicting interest. But the Trustee has not identified any such corporate decision in this case that needed to be made for *Keywell*. The only question was whether the Fiduciary Defendants would agree to convert the *NewKey* debt to equity as Prophet had demanded. But this is not an action over which an independent Keywell committee would have had any authority. Absent a corporate decision on which an independent committee could take action, it is not clear that the failure to appoint an independent committee can constitute a breach of fiduciary duty to Keywell.

### III. Causation

Even if these circumstances constituted a breach of fiduciary duty, the Trustee has failed to prove causation. The Trustee argues that an independent committee should have been appointed to prevail upon the Fiduciary Defendants to convert the debt. But there is no reason to believe that an independent committee would have been able to persuade the Fiduciary Defendants to take this action. The Trustee argues that there is no way to know what the effect of an independent committee would have been. But Prophet had an interest comparable to any potential independent committee to convince the Fiduciary Defendants to agree to convert the debt, and they were unsuccessful. The Trustee has not identified any leverage an independent committee might have brought to bear on the Fiduciary Defendants to demonstrate that an independent committee would have altered the equation in these circumstances. The potential connection between the Fiduciary Defendants' failure to appoint an independent committee and the failure of the Prophet deal is too attenuated to find a causal connection between the two events.

The Trustee also argues that the Fiduciary Defendants breached their duty by not properly presenting the deal to all the individuals with corporate authority in Keywell and NewKey (whether informally or by a formal board proposal).[6] These

---

[6] See R. 99 at 25 ("[T]here is no evidence that Lozier and Sheffieck attempted to persuade Tauber to convert, or that they raised the possibility of conversion with NewKey's other members. Either action might have salvaged the Prophet deal."); R. 99 at 12 ("[T]here is no evidence that the Fiduciary Defendants consulted NewKey's other members to inquire whether they would agree to conversion of the NewKey debt.")

15

arguments also fail for lack of causation. The NewKey operating agreements requires a 75% membership vote to convert the debt to equity. Both Lozier and Tauber each held more than 25% of each of the NewKeys and thus could have unilaterally vetoed any such proposal. Their opposition, which is clear from the response to Prophet, made it futile to propose the debt conversion plan to the other minority members.

The Trustee also argues that Lozier failed to properly bring the Prophet deal to the KCL board, implying that a proper presentation might have led to appointment of an independent committee.[7] As discussed, an independent committee would not have changed the equation. Additionally, the KCL board did not have the power to accept the Prophet deal. That power rested with the Keywell board. And even without Tauber (who had left the decision to Lozier), Lozer and Sheffieck together controlled more than 50% of Keywell. Moreover, Lozier's letter to Prophet stated that he had taken the matter to the Keywell board. The Trustee attacks this assertion by arguing that there is no evidence that Lozier actually did so, and Tauber and Rosenberg—two of three KCL board members—testified that they were not part of the discussions. But Lozier claimed that he consulted with the Keywell board, not the KCL board. And there is no dispute that Lozier and Sheffieck, who together owned more than 50% of Keywell, were closely involved in

---

[7] See R. 99 at 12 ("Nor is there any evidence that the KCL Board [Keywell's manager] convened to discuss the issue. Tauber admitted that he wasn't aware of the negotiations with Prohet before Keywell's bankruptcy. Rosenberg's name doesn't appear anywhere in the relevant record at this point"); R. 99 at 24 ("no evidence exists that any such consultation with the KCL Board actually occurred").

addressing the Prophet deal. A very small number of people had the power to affect decision-making regarding Keywell and the NewKeys. Those individuals were involved in the process to one extent or another. While not all formalities may have been followed in the communication of information, there is insufficient evidence for the Court to find that any failure to follow formal communication procedures caused the Prophet deal to fail.

## Conclusion

For the foregoing reasons, the Court finds in Defendants' favor on the Trustee's claim that the Fiduciary Defendants breached their fiduciary duties in connection with the Prophet deal. Accordingly, the Trustee's motion for summary judgment in case 15 C 11224 [98] is denied; Defendants motion for judgment in case 15 C 11226 [23] is granted; and the Trustee's motion for summary judgment in case 15 C 11253 [23] is denied. As the Court has already entered judgment in all three cases, this order completes the proceedings before this Court.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 19, 2018